

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-75,814-04

### EX PARTE ALVIN CHARLES WOODS, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 1528843-B IN THE 228TH DISTRICT COURT
### FROM HARRIS COUNTY

**KELLER, P.J. filed a concurring opinion in which KEEL, J., joined.**

### CONCURRING OPINION

Applicant claims that his motion to dismiss is technically not a late-stage motion under *Ex parte Speckman*[1] because the trial court had not yet made findings of fact. Because *Speckman* focused on the issuance of findings of fact as the point in time at which the proceedings become "late stage" for purposes of filing a motion to dismiss, and because habeas counsel might have relied on that language, I agree that we should grant Applicant's motion. But this case shows that the purposes behind limiting late-stage dismissals can be implicated well before the findings of fact are issued.

---

[1] 537 S.W.3d 49 (Tex. Crim. App. 2017).

Going forward, I would recognize that other circumstances—such as those present here—can result in the proceedings becoming "late-stage" for the purpose of considering a motion to dismiss.

## I. BACKGROUND

To understand why Applicant's case implicates the purposes articulated in *Speckman*, we need to review the procedural history of this case. That history is somewhat long and involved, but that fact actually helps explain why the *Speckman* purposes are implicated.

Pursuant to a plea bargain, Applicant was sentenced to two years in prison on November 10, 2016.

On February 1, 2023, Applicant filed this, his first, habeas application. In it, he raised claims of double jeopardy, ineffective assistance of counsel, and illegal sentence. He has long since discharged his sentence, but the application alleged that he suffered collateral consequences, including losing his job with the United States Postal Service.[2]

On April 3, 2023, the State submitted proposed findings of fact that stated that Applicant failed to invoke the jurisdiction of the court because he was not "confined" due to his conviction having been discharged.

On April 19, 2023, the habeas court appointed counsel for Applicant.

On May 5, 2023, habeas counsel requested an Order Designating Issues (ODI). A few days later, the habeas court issued an ODI and ordered trial counsel to file an affidavit responding to the

---

[2] *See See Ex parte Harrington*, 310 S.W.3d 452, 457-58 (Tex. Crim. App. 2010) (Collateral consequences satisfy habeas "confinement" requirement.). Applicant attaches an exhibit that indicates he is in a federal detention center. He does not explain why he is in such a detention center, which raises a question of whether his state conviction really is what caused him to lose his postal-service job. The other collateral consequences he alleges are things that might happen in the future but have not happened yet.

ineffective assistance allegations. Trial counsel was ordered to provide his response within thirty days.

Almost three months later, on August 2, 2023, habeas counsel filed a brief on the "confinement" issue. Habeas counsel argued that the application specifically alleged a collateral consequence of his conviction—the loss of his job—and also alleged "possible future collateral consequences."

On August 17, 2023, trial counsel filed his responsive affidavit. He stated that he did not remember the case and had not retained a file on it. He said he always makes sure his clients fully understand the nature of the charges and any defensive or evidentiary matters relevant to the case. He further said he always makes sure his clients' pleas are entered knowingly and voluntarily and he had no reason to believe he deviated from that practice. He also said he would have pursued any investigation that was warranted.

The next day, the State filed proposed findings of fact rejecting Applicant's claims on the merits.

On September 8, 2023, habeas counsel filed a motion to dismiss the application. He specifically claimed that this was not a late-stage motion because findings of fact had not been made by the habeas court. Habeas counsel also filed his own proposed findings of fact that did not address the merits of the application but addressed whether the application should be dismissed. This included a proposed finding that, "When counsel was appointed, statutory deadlines were running," and that, "Applicant's motion to dismiss the writ application was filed before any findings of fact and conclusions of law were considered or reached." The habeas record includes a State's exhibit that purports to be a written communication from habeas counsel to the prosecutor, dated two days

earlier. In it, habeas counsel says, "I've finally been able to speak with Mr. Woods and he's agreed that I may move to dismiss his writ application." The communication asks if the State will oppose dismissal and says, "I didn't want to cold call you on it."

The State filed an objection to dismissing the application. The State argued that the purposes articulated in *Speckman* were implicated in Applicant's case when he filed his motion to dismiss. The habeas court sustained the State's objection, effectively denying the motion to dismiss.

On September 14, 2023, the habeas court issued findings of fact rejecting Applicant's claims on the merits. These include a finding that trial counsel's affidavit was credible. Although aspects of the State's proposed findings can be seen in the habeas court's findings, the habeas court's findings are organized differently and cite additional authority.

## II. ANALYSIS

In *Ex parte Speckman*, we concluded that, once a habeas court has reached the point of "making findings of fact and conclusions of law, . . .[l]iberally permitting an applicant to discontinue his habeas litigation at that late stage without prejudice so that he may later refile the application, without any showing of good cause, would defeat the Legislature's efforts at creating an efficient system for the resolution of habeas claims."[3] There were findings of fact in *Speckman*, and we held that under those circumstances, a motion to dismiss was too late. We did not address, or need to address, whether a motion to dismiss could be considered late-stage if there were no findings of fact.

We raised several concerns that motivated our conclusion in *Speckman*. We explained that liberally permitting late-stage dismissals would allow a habeas applicant to circumvent the legislative

---

[3] 537 S.W.3d at 52.

scheme designed to give one a single bite of the habeas apple that fully resolves all habeas claims.[4] We further explained that late-stage dismissals waste judicial resources, encourage the filing of premature habeas applications, and allow the dismissal to be misused as a discovery tactic that allows what amounts to a dry run of Applicant's claim with a preview of the State's responses.[5]

All of these concerns are present here. Habeas counsel asked the habeas court to enter an Order Designating Issues (ODI), which it did, which prevented the case from being forwarded to us. Asking for an ODI is the opposite of trying to get the case dismissed. Not only does an ODI delay the timetable for resolution, but it also requires both the habeas court and the State to engage in the process of investigating and evaluating an applicant's habeas claims. And in this case, it required trial counsel to submit an affidavit responding to the particular claims raised. Asking for such an order would normally suggest that the habeas applicant has laid all the relevant issues on the table and is asking for resolution. It is inconsistent with the notion that the application should be dismissed as a procedural matter due to an incomplete and premature filing.

Habeas counsel seems to imply (but never says explicitly) that he saw the ODI as a stopgap that would delay resolution of the habeas application until he could talk to Applicant about obtaining a dismissal. But habeas counsel had some time to discuss the issue with Applicant before asking for an ODI. If that was not enough time to contact Applicant, habeas counsel could have notified the State and the trial court of that fact and asked that any investigation be suspended until he could confer with the client. Instead, he allowed the habeas court and the State to assume that the issuance of the ODI signaled what it usually means—the commencement of a serious investigation into

---

[4] *Id.*

[5] *Id.*

Applicant's claims. Had the habeas court been told that the ODI motion was a stopgap device, then it could have refrained from ordering trial counsel to file an affidavit until it knew the habeas proceedings were going forward and knew what claims the attorney would need to address.

Also, about three-and-a-half months after habeas counsel was appointed, he filed a brief on why the habeas application should not be dismissed due Applicant's invocation of collateral consequences. That should have been more than enough time for habeas counsel to ascertain that the case needed to be dismissed, albeit for a different reason, and to have contacted Applicant to see if he would consent to dismissal.

Instead, habeas counsel waited four months after appointment to request that the application be dismissed. And that request occurred only after trial counsel filed his affidavit and the State filed its proposed findings based on that affidavit. At that point, counsel could have believed that Applicant was going to lose. Habeas counsel pointed out in his motion to dismiss that trial counsel filed his affidavit two months late. But that should be counted against Applicant in his quest to dismiss because it means that he had even more time than expected to decide that the application was incomplete and to ask for a dismissal.

And after that, habeas counsel waited another couple of weeks after the State's proposed findings. The habeas court did not sign off on the State's proposed findings but drafted its own. And the habeas court declined to adopt Applicant's proposed findings, including the proposed finding that findings had not yet been considered by the habeas court. So it seems that the habeas court was probably in the middle of researching and composing its findings when Applicant requested the dismissal.

Even assuming the good faith of habeas counsel, which I do, he wasted the time of trial

counsel, the State, and the habeas court by asking for an ODI, not moving for a dismissal for months, and not telling the habeas court and the State that he was seeking to suspend the proceedings until he could consult with his client. If habeas counsel could not reach his client until shortly before the motion to dismiss was filed, he could have apprised the habeas court and the State all along about that fact instead of dropping it on them at the last possible moment. It might be that habeas counsel thought the trial court would refrain from issuing findings until both parties had submitted findings. That is not an unreasonable assumption, but it is also reasonable to think that the habeas court could begin conducting its own research and considering what findings might be appropriate after seeing what the State has submitted, which appears to be what happened. The next document the habeas court would have expected from habeas counsel would have been his proposed findings on the merits. Instead, habeas counsel filed a motion to dismiss, and he recommended findings, but they were on this new and completely unexpected issue at a time when the habeas court would reasonably believe the case was being wrapped up.

Regarding the *purposes* articulated in *Speckman* for disfavoring late-stage dismissals, this is not even a close case. It is only close to the extent that *Speckman* suggested, but did not hold, that the findings of fact was the point at which a habeas case becomes "late stage." The facts here illustrate that it can be sooner. Asking for an ODI without informing the habeas court and the State that it is meant as a stopgap measure, arguing against dismissal months after filing, waiting to file the motion until after receiving counsel's affidavit, and waiting until after the State's proposed findings on the merits are all facts weighing in favor of concluding that Applicant's motion to dismiss was in fact a late-stage motion. Any of these facts warrants an explanation as to why Applicant's motion should be granted and should trigger a *Speckman* inquiry. And any evidence that

counsel diligently tried to communicate with the habeas applicant is information that could be considered as part of the "good cause" inquiry under *Speckman*.

Because habeas counsel may have relied on *Speckman'*s focus on the issuance of findings, I would not apply *Speckman* to this case. But going forward, I would apply *Speckman* to future habeas actions that reach the kinds of stages that implicate the purposes articulated under *Speckman*.

Filed: November 15, 2023

Publish